**El-Hag & Associates**

777 Westchester Ave, Suite 101
White Plains, New York 10604
(O) (914) 218-6190
(F) (914) 206-4176
www.ElHaglaw.com
Jordan@Elhaglaw.com

*The Firm that Fights for Workers' Rights!*

March 28, 2019

**Via ECF**
Hon. Steven M. Gold
United States District Court Magistrate Judge
Eastern District of New York
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:    *Request for approval of FLSA Settlement Agreement.*
                  *Jackson v. Avalanche Home Health Care Services Inc.et. al. 17-cv- 6217(SMG).*

Dear Hon. Judge Gold:

      Our office represents the plaintiff, Banetta Jackson (the "Plaintiff") in the above referenced matter. I am pleased to advise the Court that Plaintiff, and the Defendants recently entered into a Negotiated Settlement Agreement ("Agreement") which includes a release of, *inter alia,* the Plaintiff's Fair Labor Standards Act ("FLSA") claims. As such, we write with the consent of counsel for the Defendants to jointly request that the Court approve the parties' proposed Agreement. We are submitting the fully executed Agreement together with a proposed order of voluntary dismissal with prejudice. If the Court finds that the agreement is fair and reasonable, we respectfully request that the Court "So Order" the proposed order of voluntary dismissal with prejudice.

      The terms of the Agreement – attached hereto as Exhibit "A" – provide that in exchange for a release from Plaintiff of any and all claims under the FLSA and the New York Labor Law ("NYLL"), Plaintiff will receive a total gross sum of Twenty-Nine Thousand Dollars and Zero Cents ($29,000.00) (the "Settlement Amount"), inclusive of attorney's fees and costs.

      The Agreement, which complies with *Cheeks v. Freeport Pancake House, Inc.,* No. 14-cv-299 (2d Cir. 2015) ("Cheeks"), reflects a compromise between the Plaintiff and Defendants. The Settlement Amount is being allocated as follows: (1) $18,413.34 payable to Banetta Jackson and (2) $10,586.66 to El-Hag & Associates, P.C, consisting of $9,666.66 for legal fees and $920.00 in expenses.

1

The reasons that this Agreement complies with Cheeks and should be approved by the Court are as follows:

1. **Class/ Collective Status**. This is not a class/collective action settlement.

2. **Computation of Plaintiff's Potential Recovery.** After performing a detailed analysis of the Defendants' time and pay records, Plaintiff identified damages of $4,586.35 (comprised of $2,293.17 in wages and $2,293.17 in liquidated damages). These first computations are attached hereto as Exhibit "B." However, Plaintiff has also computed damages equal to $108,226.95 if Plaintiff includes her alleged unpaid sleep time as unpaid compensation. This computation is attached hereto as Exhibit "C."

   By way of background, Plaintiff worked as a home health aide who spent the night in the home of her ward when working certain shifts. Plaintiff was required to sleep at the ward's home sometimes up to four nights per week. For years under the New York State labor law, the sleep time was not considered compensable time. However, in *Andryeyeva v. New York Home Attendant Agency*, 45 Misc. 3d 820 (Sup. Ct. Kings County Sept. 16, 2014), the New York Supreme Court held that the sleep time was compensable. Mass litigation concerning the issue ensued and the NY Department of Labor issued an emergency order stating that sleep time was not compensable. Since then litigation has been in flux concerning the issue of whether sleep time is compensable time. On March 7, 2018, the Second Department Appellate Division issued a decision certifying the question to the Court of Appeals, paving the way for final resolution of this matter in New York.

   Accordingly, Plaintiff desires to settle this matter with a "bird in the hand" rather than engage in long protracted litigation. Additionally, if the Court of Appeals reverses the lower court, then Plaintiff will have a claim worth $4,586.25, which is significantly lower than the settlement offer here. Accordingly, Plaintiff desires to resolve this matter and move on to the next phase of her life.

   Although the Defendants dispute the Plaintiff's allegations regarding the number of hours that she claims to have worked, and also dispute the accuracy of the Plaintiff's damages calculations, for purposes of settlement the parties agreed to resolve the Plaintiff's claims for the Settlement Amount of $29,000.

3. **Attorney fees are fair and reasonable.**[1] Plaintiff's counsel is receiving a standard 1/3 ( $9,666.66) in legal fees and $400 for the filing fee, $320 for process serving, and $200 reimbursement for money expended at Plaintiff's request. [2]

   I have attached a copy of my billing records as Exhibit "C" hereto. I use a law practice management software called Clio. With this program I am able to create contemporaneous billing records that are logged into the program. I can then autogenerate a detailed bill of the hours and expenses I have expended on any one of my cases. This is the program I used to generate my time records here.

   My hourly time expended by my firm equals $10,706.00. This includes my time 28.63 hours billed at a rate of $350 per hour, and excludes all paralegal work, for a total of $10,940.50 [3] Accordingly, the $9,666.66 fee is less than the lodestar rate and in line with the standard 1/3 attorney fee structure in FLSA cases.

4. **Release is narrowly tailored.** Pursuant to Cheeks, the release of claims is narrowly tailored to only release the Plaintiff's wage and hour claims.

5. **Risks of litigation.** Plaintiff wishes to avoid the risk in establishing liability and damages. As explained *supra*, there is a significant legal risk in the New York State law changing in favor of Defendants, in addition to the inherent risk in going to trial of being unable to establish any liability. A trial on the merits would involve significant risks to the Plaintiff because of the fact-intensive nature of proving liability under the FLSA. Such risk is unnecessary given that Plaintiff is receiving a significant recovery of alleged wages owed while eliminating the risks and burdens of litigation and a trial.

6. **Negotiation at arm's length.** This settlement was reached at arm's length through substantial negotiations by the parties through their respective counsel. The parties were represented by competent and experienced counsel during the litigation and settlement process. There was an exchange of relevant documents and information and an open sharing of facts. The parties negotiated vigorously and were able to reach an agreement in which the Plaintiff would receive a significant amount of back wages allegedly owed and eliminating the burdens and costs of trial.

For the foregoing reasons, Plaintiff and Defendants believe that the Settlement Amount represents a fair and equitable compromise that allows them to proceed with their personal and

---

[1] While Defendants' counsel joins in the request for approval of the settlement on behalf of Defendants, Defendants take no position as to Plaintiff's counsel's request for approval of fees from the settlement.

[2] This is subject matter that is privileged, but Plaintiff is obviously aware of the funds as she was the recipient of the funds to pay the expense.

[3] This computation was made as of March 5, 2019 and the numbers may have increased since the drafting of this letter.

3

work lives without the disruptions, inconveniences, and risks inherent in litigation. In light of the above, Plaintiff and Defendants respectfully request that this Court approve the Parties' Agreement.

    We sincerely thank the Court for its time and consideration in this matter.

                        Respectfully submitted,

                        Jordan El-Hag, Esq.
                        Counsel for Plaintiff